Meaux v. Meaux, &c.

4r 475
83 391

81 475
f130 717

CASE 75—WILLS. PRACTICE—DECEMBER 15, 1883.

# Meaux v. Meaux, &c.

APPEAL FROM MERCER CIRCUIT COURT.

Appellant had leave to file his bill of exceptions upon a certain day of the succeeding term. The bill was tendered in open court at the succeeding term, and *before* the day fixed for filing it. Held:

1. The provision of the Code that "time may be given to prepare a bill of exceptions, but not beyond a day in the succeeding term, to be fixed by the court," implies a right to file the bill at any time during the term before the day fixed.

2. The practice of obtaining an extension of time to a succeeding term to file a bill of exceptions is not by any means a safe one.

3. This court will not grant the writ of *subpœna duces tecum* that the original bill may be inspected, unless there is an affidavit that the instructions embodied in the bill were not those offered, given, or refused by the court in the trial.

4. A ground for a new trial, "because of errors of law occurring at the trial," is too general, and will be disregarded.

5. When an appeal reaches this court the grounds stated in the court below, "that the court erred in refusing important testimony by plaintiff," or "erred in admitting incompetent testimony for the defendant," ought to be made the basis of a more specific statement, and the particular testimony should be stated. The trial judge is presumed to know what errors are complained of, but this court can only know it by an assignment of errors.

6. The same particularity is not required in regard to instructions given or refused when errors are assigned. Instructions can be ascertained by even a cursory examination of the bill of exceptions. Not so, however, as to evidence.

7. That "the verdict or judgment is contrary to evidence" is sufficient, and brings up for review, where there is no other assignment, the entire testimony in the case.

8. The contestants were properly allowed to prove that a witness had made statements different from his present testimony, but proof of the statement by the witness that other witnesses, in some other trial, had sworn to falsehoods, were incompetent.

P. B. THOMPSON, DURHAM AND POSTON FOR APPELLANT.

Every ground for a new trial fully set forth the error relied upon, except, perhaps, that which relies upon "errors of law occurring during the trial." As to the others, no real objection can be made.

The court improperly permitted several witnesses to detail the conversations and acts of one of the attesting witnesses.

Meaux v. Meaux, &c.

The court erred in refusing to give instructions (a) 5, (a) 4, and erred in
giving instructions Nos. 5 and 4 on motion of appellee. (McClain v.
Dibble, 13 Bush, 298; 2 Bibb, 150; 1 Mar., 133; 5 Mon., 34; 10 B.
Mon., 259; Thompson v. Blackwell, 17 B. Mon.; 1 B. Mon., 170; 4
Litt., 273; 5 Ib., 43; 5 Mon., 34; Whart., vol. 1, secs. 20 and 557; 1 B.
Mon., 170; 1 Met., 139.)

BELL & WILSON for appellees.

The grounds for a new trial made by appellants raised no question that can
be considered by the court, except the fifth, which is that the verdict
is not sustained by the evidence.

It is but fair that a court that has made an error shall have that more spe-
cifically called to its attention.

No error was committed by the court in giving or refusing instructions,
nor was any error made in permitting or rejecting evidence. (McClain
v. Dibble, 13 Bush, 297; 14 Ib., 297; Helm v. Coffey, 80 Ky., 176;
Bowman v. Bartlett, 3 Mar., 98; 9 B. Mon., 76; Thompson v. Thomp-
son, 17 B. Mon., 28; Howard v. Coke, 7 Ib., 657; Tudor's case, 17;
Ib., 392; Harrell's case, 1 Duv., 206; Smith v. Kelley, 2 Bush, 558;
Kevil v. Kevil, 2 Bush, 615; Reid's case, 2 B. Mon., 80; Elliott's will,
2 J. J. Mar., 342; Shropshire's will, 5 Ib., 92; Wise v. Fort, 81 Ky.;
13 Bush, 169; Hopson v. Boyd, 6 B. Mon., 297.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This record presents various questions of practice under
the Code that the court should dispose of before proceeding
to consider the merits of the controversy.    This is an ap-
peal from the judgment below determining that a certain
paper offered for probate in the Mercer county court is not
the last will and testament of Lowery Meaux.

The first question presented is, does the bill of exceptions
form a part of the record?    Section 334 of the Civil Code
provides that "the party objecting must except when the
decision is made, and time may be given to prepare a bill of
exceptions, *but not beyond a day* in the succeeding term to
be fixed by the court.    The bill of evidence in this case was
tendered in open court at the succeeding term, and *before*
the day fixed for filing it, and taken for consideration by the
judge and filed at the same term, but on a day subsequent
to the day fixed in the order for filing it.    It is insisted by

counsel that the appellant had no right to file or tender the bill on any other day than the one designated at the time leave was given to file it at the succeeding term, and, if this is not the correct practice, that it was not filed until a subsequent day, and therefore should be excluded from the record.

The framers of the Code evidently intended that the party whose duty it was to prepare and present the bill should not file it at a day *beyond* that fixed by the court when extending the time, and the words *not beyond a day to be fixed by the court* would imply a right to file it at any time during the term before the day.   It is argued that if this is the construction given the provision, that the appellee or adverse party is required to be in court every day of the term up to and including the day fixed, in order that he may have an opportunity to examine the exceptions, or at least to know that they are filed.   This would work a seeming hardship; but it is to be presumed that the application for an extension of time must be shown to be absolutely indispensable before the judge will grant it, and therefore that such a case will seldom occur.   It is an unsafe and dangerous practice, working often much injustice to litigants, to extend the time to a succeeding term, when court and counsel may lose sight of the material and important exceptions taken, as well as forget the statements of witnesses whose testimony is of the greatest importance to the one side or the other, and as it is only in cases of *necessity*, arising from a want of time to prepare the bill where time will be given, cases resulting in the inconvenience complained of must seldom occur.   We think, therefore, that the appellant had the right to file the bill before the day fixed by the court, and that a tender of it should be regarded as equivalent to a filing.   The bill.

was prepared and in a complete state, and when tendered
to the judge and taken by him for consideration, the appel-
lant had no control over it.    He had done all he could have
done or was required to do.    He tendered it for the pur-
pose of filing, and it should be considered as filed.

It is again insisted that the instructions are not part of the
record, and the original bill of evidence is brought to this
court for the purpose of showing that the instructions were
not embodied in the bill when signed by the judge, and the
words *here insert them* entered so as to direct the clerk what
instructions to copy.    In the opinion delivered at the last
term, in the case of Forrest v. Crenshaw, the instructions
were not made part of the record by an order of court, or
included in the bill of evidence, but the clerk, in a subse-
quent part of the record, certified *that these were the instruc-
tions given.*    The bill of evidence signed by the judge was
not complete, and what instructions were given or refused
this court could not know, except from the statement of the
clerk.    The usual mode of making up bills of exception is
by the direction, *here insert* instructions 1, 2, *h*, or instruc-
tions *a*, *b*, *h*, or instructions in the handwriting of the court
or counsel, so as the clerk can identify them; and when
copied into the bill of evidence, in the usual form, the bill
is complete and the instructions a part of the record; or
when the court directs the insertion of the instructions
without identifying them, and the clerk inserts the instruc-
tions, thereby making the bill complete, this court will not
grant the writ of *subpœna ducus tecum* that the original bill
may be inspected, unless there is an affidavit that the in-
structions embodied in the bill were not those offered, given,
or refused by the court on the trial, and so with reference to
any *exhibit* made part of the bill of evidence.

Meaux v. Meaux, &c.

Again, it is urged that the grounds for a new trial are not sufficiently specified. The grounds are—

1. Because the court permitted the introduction of incompetent and illegal testimony that was excepted to at the time.

2. Because the court erred in rejecting important testimony which was offered in his behalf.

3. Because the court erred in giving the instructions for the defendant.

4. The court erred in refusing instructions offered by the plaintiff.

5. Because the verdict is contrary to the law and the evidence.

6. Because of errors of law occurring at the trial, and excepted to by defendant.

All of these grounds are sufficiently specific for the trial court, except the 6th, "*Because of errors of law occurring at the trial.*" Such a ground brings up for revision before the trial court and this court the entire record, and requires an examination of every step taken, for the purpose of ascertaining whether any error exists to the prejudice of the party complaining. It is too general, and will be disregarded. An error in rejecting competent testimony, or in admitting incompetent testimony, was, under the former practice, sufficiently stated, although general in its terms, in a motion for a new trial. The court, during the progress of the trial, must be presumed to know the exceptions reserved by counsel in this regard (for without the exceptions the error will not avail), and, when the motion is made, he is informed of the errors by reason of the exceptions, and so in regard to instructions, or error in giving instructions for one party, or refusing to give for the other, is sufficient, because exceptions are taken at the time they are given or rejected.

The trial court is informed of the errors by the exceptions taken during the progress of the trial, and his attention again called to them by the motion and grounds for a new trial.

When the case reaches this court the grounds stated in the court below on the motion for a new trial, viz., that the court erred in rejecting important testimony offered by the plaintiff, or erred in admitting incompetent testimony for the defendant, may be made the basis of a more specific statement in this court in assigning the errors.    The particular testimony complained of should be stated.    This should be done for the reason that this court is not as familiar with the record as the court below.    The trial judge is presumed to know, from the general grounds stated, what errors are being complained of, as exceptions were reserved during the progress of the trial.    If the grounds in the motion for a new trial are to be as specific as the assignment of errors, and this court having adjudged that nothing can be assigned for error that was not made a ground for a new trial, there would be no necessity for an assignment of error in this court, as the grounds are fully stated in the court below. The object in making the assignment here is, that they shall be more specific, and particularly in regard to the admission or rejection of incompetent testimony.    The same particularity is not required in regard to instructions in this court when the errors come to be assigned.    The instructions given and refused are found together in the bill of evidence when made out in the usual form, and a mere glance of the judge having the record will enable him to ascertain the instructions to which the assignment of error applies.    Errors in this court in regard to evidence are like errors in reference to a commissioner's report of settlement in

a suit in equity.    Unless the assignment points out the par-
ticular error, the court must read the entire evidence, or
the entire settlement, in order to ascertain of what the appel-
lant is complaining.    An assignment, therefore, in this
court, that the court erred in giving the instructions for the
plaintiff, or in refusing instructions for the defendant, will
be held sufficient.    The instructions can be readily ascer-
tained without even the brief of counsel, and by a cursory
examination of that portion of the bill of evidence contain-
ing them, but not so in regard to the evidence.    In the
absence of any brief, or the omission in the brief to refer to
the evidence complained of, it would necessitate the reading
of the entire record outside of the pleadings.    This court,
in the case of the L. & N. Railroad v. McCoy, delivered at
the present term, in reference to instructions alluding to
assignments of error, said that a general assignment was
proper where they applied to the principal issue, and laid
down the liberal rule in addition, that where the assignment
called the attention of the court to the error complained of,
it was sufficient.    That the verdict or judgment is contrary
to the evidence, is also sufficient, and brings up for review,
where there is no other assignment, the entire testimony for
the purpose only of determining whether the verdict is pal-
pably against the testimony.    In this view of these ques-
tions of practice, the grounds contained in the motion for a
new trial below are sufficiently specific, and so of the assign-
ment of errors in this court.    The Code of Practice was
adopted for the purpose of simplifying the pleadings and
practice, and to prevent mere technical questions from
obstructing the administration of justice and defeating the
substantial rights of the parties.    Good pleading is always
essential.    A cause of action must be stated, and the answer,

when made, must present a defense to the recovery, or some reason why the judgment should not be rendered at the particular time. Counsel, when a case is decided against his client upon an issue of law or fact, has the right to an appeal where this court has the jurisdiction with reference to the same issues; and while a rule of practice is indispensable in all judicial tribunals, its provisions should be liberally construed, and in such a manner, when not in conflict with the rule, as will enable the parties to be heard on the merits of the controversy. Technical rules never aid the real lawyer or the court, and certainly tend to defeat the substantial rights of litigants.

On the merits of the case the principal question arises upon the admissibility of the testimony for the contestants elicited upon the cross-examination of an attesting witness to the will of W. Johnson. The issue was, (1) As to the mental condition of the testator at the time he executed the paper; (2) undue influence exercised in procuring its execution by the appellant, &c. The witness, at the time the alleged will was executed, or on the same day, was under a power of attorney, executed by the testator, authorized to transact his business. After the propounders of the will had examined this witness-in-chief, the contestants, in cross-examining the witness, required him to make many statements in regard to the business transactions between himself and the testator, and, when denying that he made certain statements with reference to these matters, he is contradicted by other witnesses, with a view of breaking down his testimony. Collateral issues are thus formed calculated to mislead the jury, and to prejudice them against the witness, or his testimony, by the repeated contradictions of his statements by other witnesses in regard to matters having no

bearing on the issue. In fact, as to all such questions, he becomes the witness for the contestants, and they ought not to be allowed to contradict him. The contestants were allowed to show that Johnson said to a witness "that the principal devisee was a *bitch*, and that Lowery was no better—that *Charlotte*, the devisee, had slandered him;" was also allowed to prove by this witness that Johnson told him that he would stand to him if he would be his witness in a suit; and all this was in contradiction of what Johnson had stated.

There is no rule better settled than "that when a witness is cross-examined on a matter collateral to the issue, he can not, as to his answer, be subsequently contradicted by the party putting the question." A witness may be compelled to disclose his interest in the controversy, his motives and prejudices, with a view of enabling the jury to place a proper estimate on his testimony. The cross-examination, or the matters brought out by it, must be relevant to the issue. In much of this testimony by the contestants is the effort to show that Johnson had made statements out of court that he would not make in court. This is not the mode of contradicting a witness. The contestants were properly allowed to prove that the witness had made statements different from his present testimony when that testimony was in regard to the issue involved; but proof of the statements by the witness that certain other witnesses, in some other trial, had sworn to lies, or were perjurers, was incompetent, although it might, and perhaps did, have reference to the inquest of lunacy that was held with reference to the mental condition of the testator weeks before he died. The witness might have been asked as to statements made by him in regard to the mental condition of the testa-

tor, or his bias might be shown by proof of his con-
duct with reference to the particular litigation, but as the
record is presented here, the issue of *devisavit vel non* has
been lost sight of in the attempt to discredit Johnson by
proof of matters having no relation to that issue.

The more serious objection is further made that, when all
this testimony was admitted, the court declined to tell the
jury that it was intended to impeach the witness only, and
must be regarded in that light. The court was asked to say
that the contradiction of the witness only went to discredit
his word; that the conversation with Johnson should be
excluded, except so far as it affected the execution of the
will and undue influence. This may have been too compre-
hensive, but, with the character of proof in, the two instruc-
tions, 4 and 5, should have been given, or both.

We perceive no objection to the other instructions, except
that the undue influence must, if it existed, have operated
upon and controlled the action of the testator at the time
the paper was executed. Instruction No. 2, at the instance
of defendant contestants, should not have been given. By
its terms any frailty of mind renders a party incompetent to
make a will.

The judgment is reversed and cause remanded, with direc-
tions to award a new trial, and for proceedings consistent
with this opinion.