## Abney v. Commonwealth.

(Decided Nov. 17, 1933.)

C. C. WILLIAMS and EDWIN R. DENNEY for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Perry—Reversing.

The appellant, Bronco Abney, having been indicted by the grand jury of Rockcastle county, charged with the willful murder of William Capps, was upon his trial therefor convicted of the offense of voluntary manslaughter and sentenced to 21 years' confinement in the penitentiary. He appeals.

In view of the conclusion we have reached, we deem it unnecessary to here make any extended statement of the evidence.

A brief synopsis of it, so far as it bears upon the question here presented, is that on the morning of March 12, 1933, the decedent, William Capps, "fell in" with his friend James Baker, at a neighborhood post office, and left there together with the declared purpose of attending the Maple Grove church, a few miles distant. On their way to the church, they first stopped to purchase a pint of liquor, which the two, together with a friend, Garvin Duncan, soon disposed of, after which Baker and Capps continued on their way to the church. They again stopped at a wayside store and purchased cigarettes, cookies, and chewing gum, and then went on towards the church by way of Hickey's spring, where they again stopped for water and to eat their cookies, after which they again resumed their journey to this nearby church. While walking down the road this short distance between the spring and the church, they met a crowd of some ten or twelve of their friends and acquaintances (young men and women and girls and boys) coming towards them, returning from the church. In passing this crowd, according to the commonwealth's witnesses, they greeted them with a hello, and then, seeing the appellant, Bronco Abney, and Miss Cleo Mason strolling together some twenty or twenty-five steps behind the crowd, the witness Baker said, "Look here," while the deceased, Capps, remarked, "Who'd a thought it." Upon the making of these remarks, the appellant jerked forth his gun from his pocket, when it discharged or was shot into the ground. Appellant there awaited the coming of Capps and Baker at the top of the hill, where the fatal difficulty between the decedent, Capps, and the appellant took place, resulting in appellant's shooting Capps in the head, from which cause he died.

According to the evidence for the commonwealth, as testified to by the eyewitness Baker, and Bill Hickey, who, though out of hearing, witnessed the shooting from the porch of his home nearby, the killing occurred as follows: When the decedent, Capps, and Baker approached appellant at the top of the hill, the decedent asked "Bronnie" (appellant, Abney) why he shot at them, to which the latter replied that he never shot at

them but into the ground, and charged Capps with having "his hands in his pockets," to which Bill Capps answered, "Now Bronnie, you know I've always been a good friend to you, I haven't got a gun. I don't carry any gun. Don't think you can pull your gun and bluff me like you try to other fellows." Then Bronnie said, "I never tried to bluff nobody," and Bill said, "I've heard that on you." Then appellant told Capps he was "just a God damned fool," when Capps answered, "You'll stand there with a gun in your hand and curse me." Bronnie then laid the gun down by him, and Baker said, "Bronnie, give me that gun," when he jerked it up and said, "Nobody's not getting this gun." The Clark boy, a close friend of appellant, leaving the front group, then came back up the hill and said, "Boys, don't have no trouble," and told appellant to come with him, that he was his friend. Then the witness Baker also said, "No, boys, let's not have any trouble." According to Baker's testimony, the appellant then said to the decedent, "Bill Capps, you are just a God damned fool," and stepped up near him and pushed him with his left hand, when Capps pushed back and "kinder glanced" his face with his open hand and staggered back, when appellant stepped back and shot him in the head, killing him.

Appellant admits he killed decedent, but claims he did so only after he had used most "vulgar, vile, and insulting language" to the girls and boys whom he had passed, and also at about the same time had so addressed him in the presence of the young lady, Miss Mason, with whom he was at the time walking at the rear of the crowd, and when he believed that the deceased, who then had his hand on his pocket, was endangering his life.

The jury having returned a verdict of guilty upon the evidence heard upon apellant's trial, and his motion and grounds for a new trial being overruled, he has prosecuted this appeal, contending that the court erred (1) in ordering and obtaining a jury from Lincoln county, and also (2) in its rulings made upon the admission and rejection of evidence.

We will first address our attention to appellant's second ground here argued for reversal of the judgment, that the trial court erred in sustaining the commonwealth's objection to certain evidence which appellant at-

tempted to introduce, and which, it is claimed by him, tended to show bias on the part of the witness Baker against him, and was admissible as tending to affect the latter's credibility. To this end the appellant attempted to show Baker's hostile feelings toward him by asking him if it was not the witness' desire that the jury convict defendant. To this question asked on cross-examination of witness the commonwealth made objection and was sustained by the court, when an avowal was made in these words, "I think there ought to be something done when he kills a man for nothing." Also the same witness was asked how many times he had talked to R. B. Bird, one of the attorneys for the prosecution, to which objection was also made and sustained. Further, the witness was asked if Mr. Denney, an attorney for the defense, had not twice come to him and asked him to tell him how the matter occurred and also had asked his father to have witness tell him how the homicide occurred, but that witness had refused to tell him anything to these questions. The commonwealth entered objection to this question, which was sustained by the court, when this avowal was made, "Yes, sir, Mr. Denney came to me, and I don't know about him coming to my father, he talked to him, but I don't know what he said." Appellant argues the court's ruling upon these questions constituted error, highly prejudicial to the defendant, as, had the witness been required to answer them, the answers would have disclosed to the jury the interest of the witness in the case and his strong prejudice against the defendant.

We do not, however, consider these contentions as meritorious, nor is it here timely to elaborate upon our reasons therefor, as it is patent that the witness was guilty of no impropriety in disclosing his information as to the facts of the homicide witnessed by him to the attorney prosecuting the case nor in declining to discuss in advance of the trial the matter of what he had seen and knew as to the facts of the homicide with the appellant's attorney. We consider it immaterial that the witness refused to discuss the case or to disclose his knowledge of the facts in advance of the trial, to appellant's attorney as he was within his rights in so doing, and therefore his complained of action could have no legal or material bearing upon his credibility. Therefore, the witness being thus within his rights, appellant cannot reasonably contend that he was preju-

diced by the ruling of the court rejecting his proffered evidence to establish an irrelevant and immaterial fact. Jones' Commentaries on Evidence, vol. 5, p. 4624; People v. Stefner, 67 Cal. App. 1, 227 P. 690. While, as argued, it is the rule of this court to allow full freedom and scope of interrogation upon cross-examination of a prosecuting witness for the purpose of affecting his credibility, and to such end a witness may be compelled to disclose his interest in the controversy, his motives and prejudices, and to testify as to his relations with the party against whom he testifies, with a view to enabling the jury to place a proper estimate upon his testimony (Civil Code of Practice, section 597; Meaux v. Meaux, 81 Ky. 475; Hayden v. Commonwealth, 140 Ky. 634, 131 S. W. 521; Leach v. Commonwealth, 129 Ky. 497, 112 S. W. 595, 33 Ky. Law Rep. 1016), we are of the opinion that the appellant was not here substantially prejudiced through the partial rejection of this line of interrogation, where that rejected was ineffectual to show bias in the witness by reason of the witness being clearly within the exercise of his right, both as to his speech or silence, in the particular instance, in not talking to the defense attorney, in advance of trial, as to the testimony he would give upon the later trial.

Further, the appellant most strenuously insists that the trial court erred to his prejudice in not allowing him to introduce evidence of the witness Baker and others tending to show that the witness Baker's father, while his son was testifying on the stand, stood within close view of him, from where he nodded or shook his head at his son in such a manner as to indicate the answer which he desired the witness to give, to the question being asked him. With a view to showing such misconduct on the part of the witness Baker, he was recalled by the appellant and asked if his father was not sitting on the banister (which appellant states was just back of the jury), in the courtroom, while he was testifying, to which witness answered that he thought he was. He was then further asked, "Isn't it a fact that while you were testifying your father either nodded or shook his head while you were testifying?" The commonwealth's objection to this question was sustained. The defendant then, in an effort to show that such was the behavior and misconduct of the witness and of his father, in attempting to direct his testimony

by thus indicating the answers to be made to the questions asked by suggestive nodding or shaking his head at his son, attempted to introduce four witnesses, who were allowed to state that they had seen the witness' father leaning upon the banister in the courtroom while his son was testifying, but in each instance the court sustained an objection to the quetion then asked them as to whether they saw the father then doing anything to influence or direct his son's testimony. Avowals were made in each instance to the effect that the witnesses all would have in substance answered, if allowed, that they had seen him nod his head for his son to answer, and had seen him shake his head for him not to answer. There was thus, by reason of such ruling of the court, withheld from the jury this evidence of improper conduct on the part of the commonwealth's main witness to the homicide, which fact, if shown to the jury, was clearly calculated to show such interest and bias against the appellant as tended to materially affect the weight and credibility of witness' testimony. The wide power and range of discretion given the trial court in connection with the conduct of a trial and the examination of witnesses, which is flexibly administered according to the sound discretion of the trial judge, and limited by but few fixed rules, has for its main object and purpose the eliciting of the true facts and circumstances of the case. The accomplishment of this end is the main and paramount purpose in conducting the examination of the witnesses. Unless, therefore, it be shown that the party complaining of the examination of the witnesses as directed by the court has been thereby substantially prejudiced in his rights, he should not be heard.

However, such wide discretionary authority vested in the court has its practical and proper limitations. By the provisions of the fundamental law of the state, the defendant is guaranteed a fair trial of the charge preferred against him by the ancient mode of trial by jury, in which he as the accused is given and assured of both the right to be heard and to meet the witnesses face to face in a public trial by an impartial jury of the vicinage. Also it is provided by section 271 of the Criminal Code of Practice, subsec. 7, that the court in which a trial is had upon an issue of fact may grant a new trial, if a verdict be rendered against the defendant by which his substantial rights have been prej-

udiced, by misconduct of the jury, or from any other cause occurring upon the trial. Again by sections 340 and 353 thereof is it further provided that a judgment of conviction shall be also reversed for any error of law appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby. In the consideration and application of these legal principles and sections of the Code, safe-guarding the right to a fair and impartial trial, this court, in Kennedy v. Commonwealth, 14 Bush, 340, as well as numerous other cases, said in regard to the matter of the court's error in the rejection or admission of evidence:

"What effect it had on the minds of the jury no one can know; * * * we cannot speculate on its effect. 'It is enough for this court to know that it was wrong, and may have operated to the prejudice of the appellant.' "

A fair and impartial trial is guaranteed by these provisions of our law to a criminal defendant, and, where such is not had by him, we are by these rules of law directed to reverese an adverse judgment and grant a new trial, to the end that the accused defendant may have such trial. Applying these fundamental principles to the determination of the question of the defendant's guilt of the crime charged in the instant case, the jury is made the sole judge of the facts to be found by them from the evidence laid before it by the witnesses when testifying under properly directed examination, enabling them to appraise their veracity and intelligently estimate the weight and credibility of their evidence. As the question of the appellant's guilt or innocence was here to be inquired into and perhaps largely determined by the jury upon its estimate and appraisement of the veracity of this impressive eye witness and the weight and credibility of his testimony, it was clearly appellant's right to have the jury hear any evidence offered by him which could reasonably tend to affect, impeach, or discredit the veracity and credibility of so important an adverse witness. The prosecuting witness Baker, whose impeachment was thus attempted, testified most positively as an eye-witness to appellant's killing of Capps. His testimony, given under such circumstances, tended to very effectively influence the minds of the jury as to the appellant's

guilt, if both his demeanor while on the stand and his account of the killing were such as to inspire their confidence in both its truth and weight. Under such circumstances, the appellant clearly had the right to introduce before the jury any evidence he had tending to discredit or impeach the veracity or weight of such adverse witness' testimony, to the end that the jury might thereby be assisted in arriving at a proper estimate of the worth and weight of his testimony when given according to the rejected evidence under such discrediting conditions. Especially is this true since the credibility of a witness may depend "as much upon himself as upon his testimony, as much upon his interest or bias shown as upon his mental cleverness, as much upon his conduct before and at the trial and the consistency and significance of his behavior from the time he became seised of the fact and at the time he relates it." All these factors, which may help show whether the witness is disinterested and telling the truth, may be properly shown as they exist, that they may be taken into account by the jury when attempting to appraise the value and credibility of the witness according to their estimate of his veracity as based upon all the evidence as to his conduct and demeanor. The witness Baker was here undertaking to testify under oath of his personal knowledge and information as to the facts and circumstances of appellant's admitted killing of the decedent, Will Capps. The jury heard him, as the witness before it, answering the questions asked as if made solely from his own knowledge, whereas the appellant claims that he was not in truth so testifying to the jury, but that his testimony was even then being directed and prompted by another, or as indicated to him by the nod and headshake of his father, who was thus testifying when not sworn yet was in effect the real witness, if he, in fact was then so directing his son while sitting behind the jury and unobserved by it.

Without here undertaking to express or even intimate an opinion as to whether or not this witness' father was in fact guilty of this or at all attempting to influence the testimony of his son, we are yet clearly of the opinion that the appellant was entitled to submit to the jury this evidence of his witnesses that such was the misconduct of the witness and his father, since, if believed by the jury, such evidence was most forcefully calculated to materially discredit and affect

the jury's estimate of both the weight and credibility of his adverse testimony. We are therefore of the opinion that the trial court's rejection of this evidence sought to be introduced by appellant was, for the reasons indicated, prejudicial to the substantial rights of the appellant as resulting in denying him a fair and impartial trial, and for such error the judgment should be reversed.

Having reached this conclusion, we deem it here unnecessary to discuss appellant's further contention that the court also erred in obtaining a jury from Lincoln county, upon the alleged ground that it failed to make a fair effort, in good faith—as required—to satisfy itself that it would be impracticable to obtain a jury free of bias in Rockcastle county, wherein the proecution of the appellant was pending, as it is unlikely such question will arise again upon a retrial of the case.

We therefore conclude, for the reasons indicated, that the judgment should be, and it is, reversed, and the case remanded for a new trial consistent with this opinion.