TRAVELERS INSURANCE COMPANY OF HART-
FORD *v.* J. FRANK FOX, ADMINISTRATOR.
[No. 54, January Term, 1928.]

*Decided April 18th, 1928.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Fendall Marbury,* with whom was *L. Wethered Barroll* on the brief, for the appellant.

*J. Cookman Boyd,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

William A. Gattis, a colored man, was employed for four or five years as foreman of a gang of negro stevedores by the United Fruit Company, who took out a group policy of life and disability insurance covering its employees. Gattis, as one of these, held a certificate issued to him by the company certifying

"that under and subject to the terms and conditions of a Group Life Policy of Insurance No. G. 3040, issued and delivered by the Travelers' Insurance Company, Hartford, Connecticut, the life of William Andrew Gattis, an employee of United Fruit Company * * * and a member of the Association United Fruit Company Dock Workers, is insured initially for the sum of five hundred dollars, payable to Alice Gattis, wife, as beneficiary if death shall occur during the continuance of said policy while the employee is insured thereunder.

"The insurance of any employee covered hereunder shall end when his employment with the employer shall end or prior thereto upon termination of membership in the Association United Fruit Company Dock Workers, except in a case where at the time of termination of employment the employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from date upon which the employee ceased to work and thereafter during the continuance of such disability, and while this policy shall remain in force until the employer shall notify the company to terminate the insurance as to such employee."

Attached to said certificate and made a part thereof was a "notice of increased insurance," in which it is stated that the insurance on the life of Gattis has been increased to $1,000 as of 12/31/24, in recognition of continued service.

Gattis died on December 12th, 1925, and his wife survived him only five days. Before her death some one on her behalf applied for payment of the insurance, but was told the widow would have to appear in person. On December 30th, 1925, appellee was appointed administrator of the personal estate of Alice Gattis. He demanded payment of the insurance, but payment was refused on the alleged ground that the insured was not in the employ of the United

Fruit Company at the time of his death. Whereupon suit was brought against the appellant by the appellee on the common counts and a special count, in which the plaintiff alleged that Gattis was insured by the defendant for $500, payable to his wife Alice Gattis as beneficiary; that this was, on December 12th, 1924, increased to the sum of $1,000, in recognition of continued service; that Gattis died on December 14th, 1925; that Alice Gattis died on December 17th, 1925; and that due demand had been made on defendant for the payment of said sum of $1,000 and payment refused.

The defendant pleaded the general issue pleas and a third plea, setting up as a defense that it was expressly provided in said policy that in case the insured ended his employment with his employer the insurance should end, and that said Gattis did end his employment with said employer on December 1st, 1925, and thereafter died on December 12th, 1925, and that at the time of his death he was not in the employ of said employer, and that under the terms of said policy no insurance was due on account of the death of said William A. Gattis. Replication and joinder of issue were entered "short." The case was tried by a jury and a verdict rendered in favor of plaintiff, on which judgment was entered. This appeal is from that judgment.

Two exceptions are brought up; one to a ruling of the trial court on evidence, and the other to its ruling on the prayers of defendant.

The reporter is requested to set out defendant's prayers as offered and the second prayer as modified by the court.

We find no error in the first exception. Defendant offered, for the purpose of corroborating the testimony of Otter, the superintendent of the United Fruit Company, that he discharged Gattis on December 1st, 1925, a card which appears to be a record card of Gattis kept by the company under a provision in the policy which required the employer to furnish the company with the names of employees whose insurance had terminated, with the date of the termination of the insurance. On this card there appears the names

of the insured employee and the beneficiary, and of the employer, and other data in connection with the insurance, and the entries, "cancelled," and, "dismissed Dec. 1, 1925." The card was produced by Otter, the superintendent of the fruit company, who testified that he did not make the entries. The court refused to admit the card. It was not made out by the witness, and there is no evidence that he saw the entries made, knew when they were made, or that he knew the handwriting. Nor does it appear that the clerk who made the entries was dead or inaccessible.

Defendant's first prayer was properly refused.

All the evidence shows that the insured was in the employ of the company up to the close of work the day before he became ill. Defendant relies upon an alleged discharge on that day. Defendant's testimony as to the time of the discharge was that it occurred at the end of the work on December 1st, 1925, and "everybody was getting paid off." Benjamin Parker, a witness for the plaintiff, testified the men were paid off when they finished working. "We stand in line and are paid off down to the wharf right at the office." Q. And when you stood in line where was Gattis? A. He was standing there next to the window. Gattis was there to get his money, too, after he sees that all his men get their money first. I saw him get his and we all went home together. During that time I didn't hear anything said about not working there. Q. If anything was said you would have heard it if you were right there? A. I was right there. I was on the second stage. It was the last of that week that he died.

If we were dealing with weight, the negative testimony of Parker, that he "didn't hear" anything about a discharge, might be slight as against the positive testimony on the other side.

This case does not come within the description, in *United Railways & Elec. Co. v. Crain,* 123 Md. at page 347, of negative testimony that may be entirely disregarded. The witness was in a position to hear, and his attention would naturally have been attracted by the discharge of a man

who for some time had been foreman of the gang in which he worked. In the other cases referred to by appellant the court was dealing with the weight of the testimony.

Then, too, there was testimony that when some one went to see the company about the insurance, right after Gattis' death, the company did not deny liability, but said the widow would have to come in person.

The burden of proving the discharge was on the defendant. It was for the jury to determine whether that burden had been met. *Calvert Bank v. Katz,* 102 Md. 56; *Lemp Brewing Co. v. Mantz,* 120 Md. 176; *Travelers Ins. Co. v. Connolly,* 145 Md. 554.

There was error in the refusal of defendant's second prayer as offered. It was a correct statement of the law as applicable to the evidence in the case, there being no evidence of disability at the time of the alleged discharge.

There was also error in the prayer granted by the court, being defendant's second prayer with a proviso. The question submitted to the jury by the proviso was not a correct proposition of law. By the contract of insurance, the liability of the insurance company ended as to the insured on the termination of his employment, "except in a case where at the time of termination of employment the employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit." This exception was not properly set out in the prayer. The word "wholly" before the word "disabled" was omitted in the prayer, and enough more to make the prayer misleading. Doubtless the learned trial judge intended this part of his instruction to be checked up by the jury with the language used in the policy; but having inserted as much as he did of the language of the policy it was misleading to leave so much to reference and to the recollection of the jury as to the exact provision of the policy.

As above stated, defendant's second prayer was good as offered. It would have been error to modify it by the proviso,

even if the proviso had been in accordance with the terms of the contract, because there was no evidence to justify the modification. But the objection on that ground is not available to the defendant on appeal, there having been no special exception.

For the error in refusing defendant's second prayer as offered and in granting the prayer as amended by the court, the judgment must be reversed and a new trial awarded.

> *Judgment reversed and new trial awarded, with costs to appellant.*