## Equitable Life Assurance Society of the United States v. Greene.

(Decided January 18, 1929.)

BRUCE & BULLITT, JOHN E. TARRANT and WM. MARSHALL for appellant.

E. BAILEY BAKER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

On the 4th day of June, 1922, the appellant, Equitable Life Assurance Society of the United States, issued to the Arctic Ice Company of Louisville, Ky., a group life insurance policy by which it insured the lives of certain employees of the ice company. Robert Greene was at that time one of the employees of the ice company, who became insured in the sum of $800 under this policy, and

by the terms of the policy his insurance was increased $100 on two occasions so that in March, 1926, it was $1,000. The employees paid no part of the premiums on the policy, these being paid by the ice company. The group policy contained this provision:

"The insurance under this policy upon the life of any employee covered by this contract shall automatically cease and determine upon the termination of such person's employment with the employer in the specified classes of employees without regard to the cause of such termination, except that the employer may elect that all employees who while insured hereunder are temporarily laid off or given leave of absence or are temporarily disabled, shall be considered to be in the employment of the employer during such period."

Under Greene's policy the appellee, Mayme Greene, was the beneficiary. Greene died in July, 1926. The appellant refused to pay the policy because of the claim that Greene had been discharged by the Arctic Ice Company on March 9, 1926. Appellee traversed this contention of appellant, and on this issue the parties went to trial. The jury returned a verdict against the appellant, and from the judgment entered thereon it has appealed.

The evidence for the appellee is to the effect that on March 9, 1926, Greene, who worked at night in the barns of the ice company, became ill and had to quit his work in the middle of the night; that he was taken to his home and was thereafter on account of his illness unable to do any work, and was in fact confined most of the time to his bed until he died in the following July. Although it was the rule, custom and practice for the various departments of the ice company to report to the main office the discharge of any employee, no such notice of any discharge of Greene was sent by the superintendent in charge of the barns. The appellee's evidence further showed that the company never considered any of its employees discharged while laying off on account of illness; that the premiums which it paid on this policy after Greene became ill and up to and including the time of his death included that necessary to keep Greene's insurance in effect; that the foreman of the barns had never heard of Greene's discharge; and that Greene never went back to

the barns after he became ill. On the other hand, the testimony of the appellant is to the effect that Greene, about two weeks after he became ill as stated above, returned to the barns to work; that the superintendent then discharged him; and that it was through oversight that no notice of the discharge was sent to the main office.

In this state of the record appellant insists that it was entitled to a peremptory instruction. But we cannot distinguish this case from that of the Equitable Life Assurance Society of the United States v. McDaniel, 223 Ky. 505, 3 S. W.(2d) 1093, which was a suit on a group policy almost exactly like the one here in controversy and where the facts were very similar to those here present. We held there the case to be one for the jury. We must so here. It was for the jury to say whether it believed the testimony of the superintendent or the evidence offered by the appellee. If the jury chose to believe the latter, it was warranted in coming to the conclusion that Greene had not been discharged. The jury was not compelled to accept the statements of the superintendent of the ice company. There is no merit in this first contention of the appellant.

Appellant also contends, however, that it was prejudicial error for the lower court to admit over its objection the testimony of the appellee herself, which went into great detail about the physical condition of her husband from the time he came home on the night he was taken ill until his death. There is probably no stronger testimony in the record than that of the appellee establishing such illness on the part of her husband as brought him within the terms of that part of the group policy which permitted the employer to elect to treat him as still in its employ. This testimony was incompetent under section 606, subsec. 2 of the Code. Penick v. Metropolitan Life Ins. Co., 220 Ky. 626, 295 S. W. 900; Standard Accident Ins. Co. v. Strunk, 220 Ky. 256, 294 S. W. 1085. Indeed the trial court in its opinion overruling the appellant's motion for a new trial concedes that such testimony was incompetent, but states that its admission was not prejudicial. In this we cannot concur. As stated, this evidence was probably the strongest testimony the appellee had concerning the condition of her husband. No other witness went into such detail as she did nor established so conclusively the continuous disability of her husband from the time he came home on the night he was taken

ill until his death. The testimony was plainly prejudicial.

Appellee, however, contends that the appellant's motion for a new trial filed in the lower court is insufficient to present this question either to the lower court or this court. So far as pertinent, appellant's motion for a new trial reads: "The court erred in admitting incompetent evidence offered by the plaintiff, Mayme Greene."

Appellee, to support its claim that this assignment is insufficient, relies on the case of Akers v. Akers, 69 S. W. 715, where we said:

> "The reasons for new trial that the court admitted incompetent evidence and misinstructed the jury are too general to call the lower court or this court to specific rulings of the court, and will not be considered. Meaux v. Meaux, 81 Ky. 479."

In this Meaux case, which the court cited in support of its position, six grounds for a new trial were set out in the motion filed for that purpose, the first two of which were: "(1) Because the court permitted the introduction of incompetent and illegal testimony that was excepted to at the time; and (2) because the court erred in rejecting important testimony which was offered in his behalf." In the Meaux case we held that all the grounds set out in the motion for a new trial were sufficiently specific *for the trial court* except the sixth, which is not pertinent to our present discussion. So far as the present question is concerned, we said:

> "An error in rejecting competent testimony, or in admitting incompetent testimony, was, under the former practice, sufficiently stated, although general in its terms, in a motion for a new trial. The court, during the progress of the trial, must be presumed to know the exceptions reserved by counsel in this regard (for without the exceptions the error will not avail), and, when the motion is made, he is informed of the errors by reason of the exceptions, and so in regard to instructions, or error in giving instructions for one party, or refusing to give for the other, is sufficient, because exceptions are taken at the time they are given or rejected. The trial court is informed of the errors by the exceptions taken during

the progress of the trial, and his attention again called to them by the motion and grounds for a new trial."

We further held, however, in this Meaux case, that when the case reaches this court our attention must be more specifically called to the errors in the admission and rejection of testimony relied upon because we are not familiar with the record as was the court below. The usual method of calling this court's attention in this more specific fashion to the errors in the admission and rejection of testimony is by brief. It is clear that the Akers case meant to go no further than the Meaux case, and the refusal to consider the errors relied upon in the admission and rejection of testimony was because they were not called specifically to the attention of this court. The court was not called upon to go beyond this, and its expressions must be read in the light of the facts of the case before it.

Because of the admission of this incompetent testimony, the judgment must be reversed, with instructions to grant the appellant a new trial in conformity with this opinion.