NELLIE C. ZEIGLER, Appellee, v. EQUITABLE LIFE ASSURANCE SOCIETY of the United States, Appellant.

No. 42845.

APRIL 2, 1935.

Henry & Henry and Mitchell & Mitchell, for appellant.

D. M. Kelleher and R. A. Knudson, for appellee.

POWERS, J.—The appellant herein, the Equitable Life Assurance Society of the United States, hereinafter referred to as the Insurance Company, issued to the Chicago, Great Western Railroad Company, hereinafter referred to as the Railroad Company, a policy of group life insurance about the first of January, 1931, covering all of the employees of the Railroad Company who should elect to participate therein. Under the plan adopted, the Railroad Company and the employees both contributed to the premium payments. The Railroad Company made the payments and deducted the employee's share from his pay check. Arthur Zeigler, a locomotive engineer of the Railroad Company, duly elected to participate in the group insurance and there was issued to him by the Insurance Company a certificate in which the Insurance Company certified that it had contracted to insure his life for the amount of $2,000, and in which his wife, Nellie C. Zeigler, the plaintiff and appellee herein, was named as beneficiary. On December 8th, following, the superintendent of the Railroad Company advised Mr. Zeigler by letter that because of his violation of one of the rules of the Railroad Company which resulted in a wreck near Austin, Minnesota, on December 1, 1931, "it becomes my unpleasant duty to dismiss you from the Company's service and you will please accept this as due notice thereof." The letter further requested Zeigler to acknowledge receipt and to turn in the Railroad Company's property in his possession. Zeigler, in due course thereafter, acknowledged receipt of the letter, turned in the Railroad Company's property, and was not thereafter in the actual employ of the Railroad Company. He was killed in an automobile accident on July 3, 1932. The present action is by the beneficiary to collect the insurance. The trial below resulted in a verdict for the plaintiff, and the Insurance Company has appealed.

Many errors are assigned by appellant. They relate to a failure of the court to sustain objections to the introduction of testimony, to the refusal of the court to direct a verdict against the plaintiff, to instructions given by the court, and to the failure of the court to set aside the verdict on motion and grant a new trial. Practically all the errors assigned revolve around appellant's claim that the record conclusively showed that Zeigler had been discharged long prior to his death, that he was not an employee of the Railroad Company at the time of his death, and was not, on that account, within the provisions of the group policy of insurance issued to the

Railroad Company. This proposition presents the only substantial question in the case.

Policies of group life insurance are relatively new and have not been, to a very wide extent, the subject of judicial consideration. Moreover, the policy contracts are so different in their terms, and the machinery devised and used for the collection of premiums and distribution of benefits are so varied, that only a limited aid can be obtained by an examination of precedents. Such policies are, however, contracts and, like other contracts, must be enforced according to their terms. And being contracts for insurance, if need for construction arises, they must, in accordance with a well-established rule, be construed liberally in favor of the insured.

The policy in the instant case, after providing that the insurance of the employee shall automatically cease upon termination of his employment with the employer, contained this exception:

"Except that the employer may elect that all employees who, while insured hereunder, are temporarily laid off or given leave of absence or are disabled or are retired on pension, shall be considered to be in the employment of the employer during such period."

The policy also contained a provision that the employee, upon leaving the service of the Railroad Company, should have the right to convert the insurance without examination to any other form of life insurance which the Insurance Company issued except term insurance.

· The record before us shows that Zeigler, shortly after the receipt of the letter referred to above, prepared a letter to be sent to the Insurance Company requesting a conversion; that before the letter was mailed, a Mr. Segner, who occupied the position of foreman of locomotive engineers for the Railroad Company and had been Mr. Zeigler's immediate superior, and who had been a member of the group of railroad officials which had investigated the wreck near Austin, Minnesota, and which was responsible for placing the blame on Zeigler which resulted in his discharge, called on Zeigler at his home; that Segner then told Zeigler not to convert his insurance, that he would be back to work in thirty or sixty days, and to send in his monthly premium to the Railroad Company. Zeigler did send in the premium payments required of him each month thereafter until his death. Such premium payments were

received and accepted by the Railroad Company, and the Railroad Company paid Zeigler's premium to the Insurance Company in full, supplementing the amount contributed by Zeigler with its own portion of the premium payment. Moreover, the same Mr. Fowler who had written the letter of dismissal to Zeigler continued to report each month to the auditor of the railroad for certification to the Insurance Company that there was no change in Zeigler's status and that he continued to be an employee of the Railroad Company, and after Zeigler's death, Fowler sent to the beneficiary blank forms for proof of death with instructions as to their execution and return. A vice president of the Railroad Company, following Zeigler's death, wrote a letter in which he said that he had "every reason to advance belief at a proper time favorable consideration would have been directed to Zeigler's reinstatement." And the Insurance Company, following Zeigler's death, wrote a letter to the Railroad Company making inquiry as to why a claim had not been presented, and said:

"We understand that this man left your employ as of January 1, 1932, but that he expected to be recalled and that his insurance was continued in force during this period. Kindly let us know whether or not the insurance was in force at the time of his death. * * * If the certificate was in force at the time, please let us know why a claim has not been presented."

To this letter the auditor of the Railroad Company replied by letter in which he said:

"Our records indicate that he was still in service and we, of course, paid your company the premiums due under his certificate. * * * It is without question of fact that his insurance was in force at the time of his death."

Some three months after the employment was terminated, Zeigler requested reinstatement. That request seems to have been refused.

It is the contention of the appellant that since Zeigler was discharged from the employ of the Railroad Company, the insurance as to him had been terminated, and that while the Railroad Company might elect to treat one who was temporarily laid off as still in its employ for the purpose of continuing the insurance, it had no such right of election as to one who had been permanently dis-

charged, and therefore that under the record the court should have directed a verdict for the insurance company.

We think the contention reflects a proper interpretation of the policy. The trouble with the conclusion reached, however, is that it is predicated on a state of facts which we cannot, under this record, assume as a matter of law. We entertain no doubt that if Zeigler was permanently discharged, the Railroad Company had no right to continue his insurance, and that in such a situation the Insurance Company would not, under its contract, be liable. The difficult question here is: Was he permanently discharged?

Whether a termination of employment by an employer is a permanent discharge or a temporary lay-off rests entirely upon the intention of the employer. This much was admitted by appellant at the bar. What, then, was the intention of the Railroad Company in this case? Appellant would have us gather that intention from a single act, namely, the letter of discharge written by Fowler. We think, however, that such intention is to be ascertained by weighing all the acts of the Railroad Company bearing on that question. The action of the Railroad Company in telling Zeigler, through Mr. Segner, that he would be back to work in thirty or sixty days; its action in accepting his premium payments and in paying the premium in full to the Insurance Company; its action in certifying to the Insurance Company that there was no change in his status as an employee; its act in sending forms for proof of claim to the beneficiary; and the letter of its vice president to the effect that at a proper time an application for his reinstatement would be considered—are all acts indicating, under the circumstances, an intention on the part of the Railroad Company to regard Zeigler as only temporarily out of the employment of the Railroad Company. That is the impression which the Insurance Company had of the situation as shown by its own letter from which we quote above. That Zeigler had such understanding of the situation is indicated by the fact that he sent in his premium payments and sought reinstatement.

Let us suppose that a locomotive engineer has violated some rule of the Railroad Company and a wreck has resulted; that the engineer has a good record through twenty years of service to the company; that it is the desire of the management to discipline him for his violation of the rule; it is not unreasonable, under such circumstances, to suppose that it might notify him of his dismissal in

order that he might suffer the maximum of punishment, although at the same time have in its mind a purpose to again re-employ him after he had been allowed to suffer awhile. Would it be incorrect, under such circumstances, to say that the engineer was temporarily out of the employment of the railroad company or temporarily laid off? We think no other term would accurately describe the situation. There was evidence in this case from which a jury could find that was about the situation here.

But appellant argues very earnestly that under the terms of the policy, the Railroad Company had no right to elect to continue the insurance of an employee who had been dismissed and discharged and that the trial court misconceived the meaning of the exception clause contained in the policy. It is true that the trial court did tell the jury, in substance, that the Railroad Company had a right to elect as to whether the termination by it of the employment of Zeigler was temporary or permanent. It is argued that no such right of election is given in the policy. There did not need to be. That was a right which the Railroad Company had before the policy was issued and which it continued to enjoy after the policy was issued. In other words, the Railroad Company had the right at all times to discharge its employees or to lay them off temporarily, and that right did not depend upon the provisions of the policy. Whether it did the one or the other in this case is a question of fact which the trial court submitted to the jury to determine. What the policy did was to give a right to continue the insurance on those employees who were not actually working for the company but were temporarily laid off.

The court told the jury, in effect, that whether the termination of Zeigler's employment by the Railroad Company was temporary or permanent would depend upon how the Railroad Company regarded it, and that its intention in that respect was to be gathered from all the acts of the Railroad Company bearing upon the question. If the status of Zeigler was, as a matter of fact, that of an employee temporarily laid off, then there is no dispute but what the Railroad Company had a right to continue his insurance in the way that it was done, so that the only disputed fact in the case was as to Zeigler's status. The Railroad Company had the exclusive right to determine that, and no misconstruction of the language of the policy was involved when the court, in substance, told the jury that the Railroad Company had that right.

The difference between the status of an employee discharged and one temporarily laid off is vague and shadowy, in any event. Both are out of employment. Both have to be called back by the employer before actual employment is resumed. The status can hardly be made to depend entirely upon the words used by the officer who terminated the employment. If he was anxious to spare the feelings of the employee, he would probably tell him he was laid off, although he had no present intention of ever calling him back to work again. On the other hand, if he was disposed to be brutal and desired to inflict punishment, he might tell the employee that he was fired or dismissed, although at the same time he might have the intention of again calling him back to work. We are satisfied that whether the termination of the employment was, in fact, permanent or only temporary, depends upon the intention of the employer, and that that intention should be arrived at by all the acts of the employer showing the intention.

Our conclusion finds support in the case of Equitable Life Assurance Society of the United States v. Larocco, 68 F. (2d) 451, decided by the Circuit Court of Appeals for the Third Circuit. The appellant here. was a party to that case, and the language of the policy, so far as it applies to the question here being considered, seems to have been identical with the language of the policy in this case. There were two group policies in the case; one in which the employee contributed a part of the premium as in the case at bar, the other in which he made no contribution. The employer, in September, notified the employee by a green slip that he was "laid off until further notice." In speaking of the effect of such notice, the court said:

"Standing alone, it severed the relation of employer and employee and was in practical effect, and we think in legal effect, a discharge."

After such termination, and in October, the employee died. He had not paid the premium of insurance, however, and there was no evidence that either he or his employer regarded the insurance as continuing, except a letter written by the employer on October 27th, after the employee's death, in which it advised, with reference to the noncontributory policy, that unless the employee furnished certain proofs by the end of the month the policy would be canceled. In speaking of the effect of this letter, the court said that when the

expression, "laid off until further notice", is read in connection with the letter, it is a permissible inference that the employer still had Larocco on its roll as a temporarily laid off employee with insurance in force.

Paraphrasing the language of that case, we may say in this case that when the so-called dismissal of Zeigler is considered with all the other circumstances to which we have heretofore called attention, indicating an intention on the part of the Railroad Company to regard Zeigler as only temporarily out of its employment, it is a permissible inference that the employer still had Zeigler on its roll as a temporarily laid off employee with insurance in force. That was the only fact question submitted to the jury by the trial court. Its submission was proper under the circumstances. No error appears.

The motion of appellee to dismiss the appeal, submitted with the case, is overruled.

The judgment of the trial court is affirmed.

All Justices concur.