GARNSKY, Respondent, vs. METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

*September 14—October 10, 1939.*

For the appellant there was a brief by *Rowland W. Stebbins,* attorney, and *Bloodgood, Kemper & Passmore* and *William E. Burke* of counsel, all of Milwaukee, and oral argument by *Mr. Burke.*

For the respondent there was a brief by *Swietlik & Swietlik,* attorneys, and *Niven & Mullaney* of counsel, all of Milwaukee, and oral argument by *John M. Niven.*

WICKHEM, J. This controversy calls for the construction of a policy of group insurance. On November 22, 1928, defendant issued to General Motors Corporation and its subsidiaries, including the Chevrolet Motor Company, a group policy of insurance. A group insurance contract is made between the insurer and the employer, and ordinarily constitutes a gratuity or partial gratuity in that the employer

pays the whole or part of the premium. The privileges and benefits of this insurance are open to the employees of the contracting employer. In this policy the employees paid a portion of the premium and the balance was paid by the employer. The clause of the policy that gives rise to this controversy is as follows:

"(c) Total-and-permanent-disability benefits. Upon receipt by the company of due notice and proof—in writing—that any employee has, (1) while insured hereunder, (2) prior to his sixtieth birthday, and (3) after having been continuously employed by the employer for two full years, become totally and permanently disabled, as a result of bodily injury or disease, so as to be prevented thereby from engaging in any occupation *and* performing any work for wage or profit, the company will discontinue the life insurance in force on the life of said employee and *three months after* receipt of such proof, will commence to pay, subject to the terms hereof, in lieu of the payment of life insurance at his death, *monthly* instalments as defined below to the said employee or to a person designated by him for the purpose; provided that if such disability is due to, or is accompanied by, mental incapacity the instalments may be paid to the beneficiary of record of the said employee, and the company will continue such payments for the period provided below, should said employee continue totally and permanently disabled."

The defense is that plaintiff, an employee of the Chevrolet Motor Company, who had applied for and received a policy of group insurance, had not been "continuously employed by the employer for two full years" prior to his disability.

Consideration of the issue requires a brief statement of the facts. In May, 1927, plaintiff began his work for the Chevrolet Motor Company. On September 29th, of that year, he made application to the employer for $1,000 group life insurance and authorized the employer to make the required deductions from his pay to be applied toward the cost of the insurance. Except for a short layoff, due to an accident, plaintiff was employed until June 22, 1930, on which

date the Chevrolet Company closed its plant and plaintiff was laid off. The employer issued a quit slip on that date, stating that plaintiff was "leaving company's service" because the company was reducing its force. The company also entered upon plaintiff's insurance card a notation of cancellation of the policy as of June 20th. Thereafter, until December 22, 1930, plaintiff was not in actual service at the Chevrolet plant and received no wages. He was called back to the plant on the latter date and put to work. A new employment card was filled out and a different clock number given plaintiff. Under the policy employees did not become eligible for group insurance until they had had three months of continuous service. On March 22, 1931, precisely three months after his return to service, plaintiff applied for and received a new policy. On or about June 26, 1931, plaintiff sustained a paralytic stroke and became totally disabled. Upon these facts the question is whether plaintiff is to be considered as having been continuously employed by the employer for two full years prior to the date of his permanent disability.

It is contended by defendant that this is a question of law and not of fact, that so far as the policy here involved is concerned, plaintiff's employment commenced on December 22, 1930, and that the facts are undisputed that when plaintiff was laid off on June 22, 1930, his employment ceased. The effect of this contention is, of course, obvious. If the period of plaintiff's layoff, that is from June 22, 1930, to December 22, 1930, is to be considered a break in his employment, he was not continuously employed for a period of two years prior to the disability. The case is not without difficulty, but we conclude that it was properly disposed of by the trial court.

In construing the Workmen's Compensation Act this court has considered that an employee, who has been temporarily laid off because of lack of work, with the expectation that he will be called back when there is work, has not terminated his

employment or ended the relation of employer and employee so far as the application of the act is concerned. *Wisconsin Granite Co. v. Industrial Comm.* 208 Wis. 270, 242 N. W. 191; *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 289, 252 N. W. 682; *Jackson Monument Co. v. Industrial Comm.* 220 Wis. 390, 265 N. W. 63. While this doctrine is not conclusive as applied to the problem of construction here involved, it has considerable weight at least when considered in connection with the rule that policies of insurance are to be construed most strongly against the insurer. *Wright v. Wrightstown-Morrison F. Mut. Ins. Co.* 222 Wis. 462, 269 N. W. 317. In the light of these rules, we approach the provisions of the policy for such light as they may throw upon the meaning of the provision under examination here.

In the paragraph of the policy dealing with eligibility of employees it is provided that all present employees who have completed at least three months of *continuous* service are eligible *"provided they are actively at work on that date."* Thus, when the Insurance Company found it necessary to be clear and specific, it had no difficulty in discovering and using words that removed any ambiguity. The word "employment" was avoided and the words *"continuous service"* and *"actively at work,"* substituted. Among the general provisions is one to the effect that,—

"As to the life insurance hereunder, layoff or leave of absence of six months or less shall not be considered . . . a termination of employment within the meaning of this policy unless notification to the contrary shall have been given by the employer to the company within thirty-one days after the date when such layoff, leave of absence . . . shall have commenced."

This provision indicates that layoff of itself was not considered to terminate employment, and that continuous employment is not necessarily interrupted by a layoff.

A careful examination of the record discloses no evidence that any such notice as is required by this clause was at any

time given to the company. The only records are those of the employer, and its conclusions as to the effect of layoff are of no materiality except as they disclose a layoff rather than a permanent discharge. The clause in question refers specifically to life insurance, and it may be argued that the restricted meaning of "termination of employment" throws no light upon the meaning of "continuous employment" as used in the clause under examination. It indicates, however, that it was contemplated that the relation of employer and employee could under certain circumstances survive a layoff of the employee. When we reach the term "continuous employment" it is the natural assumption that this refers to employment that has not been terminated or interrupted during the prescribed period, and that layoff does not, of itself, so interrupt or terminate. Especially is this true since the provision requiring continuous employment for two years is an amendment to the original policy and is not independently defined or restricted. The most that can be said against this view is that it is not an inevitable conclusion, but if this be so, the clause is at least ambiguous and the rule of construction heretofore referred to properly governs. We do not regard as a circumstance of great importance the fact that the employer and employee both supposed the first certificate to have been canceled. Probably it was, and if it was not, their misapprehension is easily explained on the ground of ignorance and mistake. There is no estoppel and nothing in the situation that has any proper bearing upon the problem of construction.

Plaintiff cites the following cases as supporting its position and representing the weight of authority: *Ozanich v. Metropolitan Life Ins. Co.* 119 Pa. Super. 52, 180 Atl. 67; *Zeigler v. Equitable Life Assur. Soc.* 219 Iowa, 872, 259 N. W. 769; *Shea v. Aetna Life Ins. Co.* 292 Mass. 575, 198 N. E. 909; *Cogsdill v. Metropolitan Life Ins. Co.* 158 S. C. 371, 155 S. E. 747; *Travelers Ins. Co. v. Fox,* 155 Md. 210, 141 Atl. 547; *Equitable Life Assur. Soc. v. Greene,* 227 Ky. 431,

13 S. W. (2d) 279; *Perkins v. Eagle Lock Co.* 118 Conn. 658, 174 Atl. 77; *Emerick v. Connecticut General Life Ins. Co.* 120 Conn. 60, 179 Atl. 335; *Porter v. Equitable Life Assur. Soc.* (Mo. App.) 71 S. W. (2d) 766. Defendant cites *Beecey v. Travelers Ins. Co.* 267 Mass. 135, 166 N. E. 571; *Neely v. Travelers Ins. Co.* 141 Kan. 691, 42 Pac. (2d) 957; *Thull v. Equitable Life Assur. Soc.* (Ohio) 178 N. E. 850. Plaintiff seeks to distinguish the first two of these authorities and concedes that the *Thull Case* is against their position. We do not deem it necessary separately to analyze each of these cases. This is a field in which for several reasons precedents are not particularly helpful. The field is new and the trend of the authorities is difficult to ascertain at this stage of its development. Furthermore, the policies are so different in terms and the situations involved vary so greatly that precedents must be applied with great caution. As was stated in *Zeigler v. Equitable Life Assur. Soc., supra* (p. 874) :

"Policies of group life insurance are relatively new and have not been, to a very wide extent, the subject of judicial consideration. Moreover, the policy contracts are so different in their terms, and the machinery devised and used for the collection of premiums and distribution of benefits are so varied, that only a limited aid can be obtained by an examination of precedents. Such policies are, however, contracts and, like other contracts, must be enforced according to their terms. And being contracts for insurance, if need for construction arises, they must, in accordance with a well-established rule, be construed liberally in favor of the insured."

Hence, we do no more than to state that, generally speaking, a majority of the jurisdictions which have so far passed upon the subject of group insurance appear to consider that a period of employment is not terminated by a temporary layoff. In many of the cases the question was whether there had been a mere layoff or an actual discharge, and this, of course, was determined as a question of fact. Here the fact that there was a temporary layoff is well established and the

sole question is whether such a layoff is effective to interrupt the continuity of employment. Construing the policy liberally in favor of the insured, and in the light of conclusions reached with reference to cases under the compensation act, we find ourselves in agreement with the conclusion of the trial court that plaintiff had been continuously employed by the Chevrolet Motor Company for two years prior to the date of disability. In view of this conclusion, we deem it unnecessary to determine whether under the provisions of the policy the two years of continuous employment are those immediately preceding the disability, and content ourselves with the suggestion that it may reasonably be argued that the period of continuous employment required to satisfy the provision involved here need not date back from the time of the disability, in which case, of course, plaintiff would clearly be entitled to recover since on any construction of the term "employment" he had been previously continuously employed by the employer for two full years in the period antedating both certificates.

*By the Court.*—Judgment affirmed.