# JOHN HANCOCK MUT. LIFE INS. CO. v. SHOUN.—
## 191 S. W. (2d) 186.

Eastern Section.   June 28, 1945.

Petition for Certiorari denied by Supreme Court, December 1, 1945.

426

Ben Davis and Kelly, Penn & Hunter, all of Kingsport, and Joe Allen, of Elizabethton, for plaintiff in error.

D. M. Guinn and Frank Bryant, both of Johnson City, for defendant in error.

BURNETT, J.   This action is one to recover on a certificate of life insurance issued under what is known as the group insurance plan.   The plaintiff prevailed before a jury and the defendant has appealed.

On April 26, 1932, the defendant, hereinafter called the company, issued to American Bemberg Corporation and North American Rayon Corporation, hereinafter called the employer a group life insurance policy insuring the lives of the employees of the employer.   By subsequent amendments this policy was kept in force up to and including a certificate issued thereunder on June 16, 1943,

on the life of Lee R. Shoun, employee, and payable to B. D. Shoun, plaintiff-in-error.

The "Master Policy" provides:

"Termination of Individual Insurance. The insurance of an employee shall automatically cease when he fails to make the required contribution for his insurance to the Employer or when his employment with the Employer shall end; provided, that in case the employer does not notify the Company to discontinue the coverage, leave of absence, temporary lay-off, retirement by the Employer, or absence due to disability shall not be considered a termination of the employment which terminates his insurance until such notice is given by the Employer to the Company." (Tr. p. 54, Group Policy.)

Viewed from the plaintiff's standpoint, Lee R. Shoun last worked for the employer on October 16, 1943. He was injured in an automobile accident on October 20, 1943, and died on October 28, 1943, without having regained consciousness. It is claimed that his insurance was terminated on October 13, 1943, because it is said he was discharged by his employer on that date.

The determinative question submitted to the jury was:

Was Lee R. Shoun discharged by his employer or was his absence from work a mere temporary lay-off or absence due to his sickness?

The burden of establishing that the employee had been discharged and his employment terminated before the injury and resulting death was on the Company. Wilson v. Prudential Insurance Company, 276 Mich. 232, 267 N. W. 824; Sturmer v. Travelers Insurance Company, 279 Ill. App, 607; Travelers Insurance Company v. Fox, 155 Md. 210, 141 A. 547.

For several months prior to the cessation of employment the employee worked for the employer. On the trial

the Company offered the employment record of the employee with the notation thereon:

"10-13-43 Refused duty stating that he would not handle copper oxide."

They also offer herein what they call a "Termination of Employment" slip. This is headed "Notice of" in small letters which is followed by larger type "Termination of Employment" and under this in very small type is "(if suspension only, check here   )." This slip is dated "10-15, 1943" and shows under "Action taken— Disch—Reason—See Card." Then follows a compilation of wages due and certain debits for insurance, etc. Under the above noted information is a printed double line and following this on the same slip of paper is a receipt acknowledging payment of all earnings and then the signature of the employee.

■ The main reliance of the company seems to be based on the above records. These records are competent and very persuasive but are not conclusive. Powell v. Equitable Life Assurance Soc. of the United States, 173 S. C. 50, 174 S. E. 649. The notation of the office record was made and signed by a foreman of the employer. This foreman is not offered as a witness. It is testified herein by another employer that on the day the deceased was injured this foreman said to him:

"Parson, have you seen Lee Roy Shoun for the last two or three days, says he has not been in for three days— tell him to come in, I need him bad."

It is also testified herein that the employee was off duty due to sickness. Prescriptions for medicine were found on the employee after his injury. The doctor who gave these prescriptions testifies as to their authenticity but does not know when they were given and does not testify for what they were given. The record also shows

that the employer deducted and sent to the company the insurance premium of the employee for the month of October, 1943. This has not been refunded and there is no claim this was deducted by inadvertence. On the "Rate Card" of the employer the deceased employee was recommended for a step up in his employment to begin on October 17, 1943. This recommendation was made October 4, 1943.

■■ It is very clear to us that the meaning of the language of the policy above quoted is that there must be a clear severance of relationship of employer and employee—not a suspension or temporary lay-off—the act of separation must be permanent. Whether or not this is true rests largely upon the intention of the employer. Ziegler v. Equitable Life Assur. Soc., 219 Iowa, 872, 259 N. W. 769. When the evidence is conflicting as to the facts in regard to this termination it becomes a question for the jury's determination. Of course if the evidence was conclusive on the question that the employee was permanently discharged there would be no liability on the company under the terms of the contract.

The jury was not bound to take the evidence of discharge from the records heretofore referred to as conclusive. They were entitled to weigh these things along with other facts heretofore outlined in determining whether or not this discharge was permanent. Let us briefly comment on these facts: First there was evidence that the foreman wanted him to return because he was needed. Second there was evidence that he was off because of sickness. Thirdly there was evidence that he had been promoted in his work. And lastly the employer and company have his insurance premium for the entire month in which he died.

"If insurance premium was deducted from the last pay check, it would have some force of indicating that the employment had not wholly ceased but that the layoff was temporary." Peters v. Ætna Life Ins. Co. of Hartford, Conn., 279 Mich. 663, 273 N. W. 307, 309.

"The whole scheme (group insurance) is paternalistic. The error of counsel, here and elsewhere, is in failing to appreciate that the paternalism is that of employer towards employee. It does not have the effect of making the benevolent parent the agent of the party with whom he inaugurates a contract for the benefit of his children." Duval v. Metropolitan Life Ins. Co., 82 N. H. 543, 136 A. 400, 404, 50 A. L. R. 1276.

■ The employer being in a paternalistic attitude toward his employee it seems reasonable that the jury might conclude under the facts herein that this discharge was issued as a spanking or punishment for disobedience while at the time of· administrating the punishment intending to re-employ· the employee after he was allowed to suffer awhile. All fathers have similarly punished their children.

■ The books are literally full of cases on the question here involved from almost every jurisdiction. We have spent a lot of time reviewing these authorities—those cited in the excellent briefs herein and many, many others. We have not attempted in this opinion to outline all the evidence submitted by the company. We have referred to the main facts. It has been our province to see whether or not there was any material credible evidence to the contrary of that offered by the company to determine whether or not ·a jury case was made out. Our conclusion is that under the facts herein the matter was properly submitted to the jury.

We have carefully read the entire record, with special attention to the assignments of error, and do not find any error which, in our opinion,woul d justify a reversal of the case.

The judgment below must be affirmed with costs.