Mary Lou **LINDSTROM**, Appellee,

v.

**AETNA LIFE INSURANCE COMPANY**, Appellant.

No. 55225.

Supreme Court of Iowa.

Jan. 17, 1973.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, Sioux City, for appellant.

McDonald, Sayre & McDonald, Cherokee, for appellee.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

Plaintiff as beneficiary named by an insured under a group accidental death and dismemberment policy, instituted this action against the insurer, Aetna Life Insurance Company, to recover a $10,000 accidental death benefit. Uncontroverted facts were developed by pleadings and cross-motions for summary judgment. Trial court sustained plaintiff's motion and granted her judgment against Aetna for $10,000, interest and costs. Aetna appeals and we reverse.

March 31, 1966, Aetna issued to Western Auto Supply Company, a Missouri corporation, group life insurance policy No. GL–313379 and a policy of group accidental death and dismemberment coverage designated as policy No. GC–313379. These policies were delivered at the Missouri home office of Western Auto, the designated policyholder, and were to provide coverage for proprietors of Western Auto's associated stores.

On August 24, 1966, Daryl D. Lindstrom (plaintiff's husband), proprietor of an associate store at Cherokee, Iowa, signed and delivered to Western Auto a request for the group coverage. Pursuant to the request, Western Auto mailed from Missouri to Lindstrom at Cherokee a "Group Insurance Certificate." This certificate was executed by Aetna and furnished by it to Western Auto.

Lindstrom disposed of his interest in the Cherokee store on December 15, 1969. In this situation the applicable provision of the master policy, made a part of the certificate, terminated the accidental death and dismemberment coverage, " * * * on the last day of the calendar month in which the individual ceases to be within a class of individuals eligible for insurance under the group policy * * *."

Reference must now be made to chapter 509, The Code, entitled "Group Insurance," and specifically to the following statute:

"*509.2 Provisions as part of group life policy.*

"No policy of group life insurance shall be delivered in this state unless it contains in substance the following provisions * * * :

\*   \*   \*   \*   \*   \*

"8. A provision that if the insurance * * * on a person covered under the policy ceases because of termination * * * of membership in the class * * * eligible for coverage under the policy, such person shall be entitled to have issued to him by the insurer, without evidence of insurability, an individual policy of life insurance * * * provided application for the individual policy shall be made, and the first premium paid to the insurer, within thirty-one days after such termination * * *.

\*   \*   \*   \*   \*   \*

"10. A provision that if a person insured under the group policy dies during

the period within which he would have been entitled to have an individual policy issued to him in accordance with subsections 8 or 9 above and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made."

Daryl D. Lindstrom sustained death in an auto accident on January 31, 1970. He had exercised no conversion privileges under either the group life or the group accidental death and dismemberment policies. The group life policy contained contractual provisions almost identical with the above quoted statute. Aetna paid the $10,000 life insurance benefit to this plaintiff as named beneficiary.

No such contractual provision was included in the accidental death and dismemberment policy. By its terms, coverage terminated on December 31, 1969. Plaintiff's claim based on this policy was denied by Aetna.

In essence, Aetna contends trial court erred in holding: 1) the accidental death and dismemberment policy was life insurance within the meaning of § 509.2, The Code, 2) delivery of the certificate constituted delivery and completion of the contract, and 3) consequently Iowa law applied and the provisions of that statute (quoted above), read into the policy, provided coverage for Lindstrom at the date of his death and justified judgment for plaintiff.

■ I. We recognize, as did trial court, that insurance policies, including group policies, are to be construed in favor of the individual insured. Eckard v. World Insurance Company, 250 Iowa 782, 96 N.W.2d 454 (1959); Zeigler v. Equitable Life Assur. Soc., 219 Iowa 872, 259 N. W. 769 (1935). This case, however, presents not the problem of construing a policy's provisions, but an issue of statutory construction and conflict of laws. We also set aside the question whether the insurance in question was group life insurance (if so, concededly governed by § 509.-2, The Code) or group accident insurance governed by other sections in chapter 509. We have stated an accident policy, in respect to the amount to be paid upon death, is essentially a policy of life insurance, Kellogg v. Iowa State Traveling Men's Ass'n, 239 Iowa 196, 29 N.W.2d 559 (1947); Wahl v. Interstate Business Men's Acc. Ass'n, 201 Iowa 1355, 207 N.W. 395 (1926). However, our result in the instant case does not require us to decide the applicability of that rule.

II. Vital to this decision is the question whether Missouri law or Iowa law shall be applied. Assuming the coverage was group life insurance, if Iowa law is to control, then under § 509.2(8) and (10) the insurance was still in force at Lindstrom's death. If Missouri law is to apply, no benefits are available under this group policy. It is conceded Missouri has no statutory or common law requiring that all group life policies or policies for payment of accidental death benefits include conversion privileges comparable to those specified in the above Iowa statute.

■ In Iowa, as elsewhere, the field of insurance is intensely regulated by statute. We must now determine the legislature's intent in chapter 509, The Code, and specifically § 509.2, which provides "No policy of group life insurance shall be delivered in this state unless it contains * * *" those provisions relied on by plaintiff. In construing such statutes we of course search for the legislative intent as shown by what the legislature said, rather than what it should or might have said. Rule 344(f)(13), Rules of Civil Procedure.

As indicated by its title, chapter 509 relates only to group insurance. Section 509.1, entitled "Form of policy," states,

"No policy of group life, accident or health insurance shall be delivered in this state unless it conforms to one of the following descriptions: * * *."

There follows lengthy, detailed and complex restrictions on such insurance, limiting who may be a policyholder, who may qualify as an insured, and related matters, including those regarding premium payments. As noted above, § 509.2 is then entitled "Provisions as part of group life policy." We have already set out those portions of that section which now concern us.

The preliminary inquiry must be whether the certificate mailed to Lindstrom in Iowa was such an essential part of the contract that the situation falls within the statutory prohibition against delivery in this state of a policy not containing the § 509.2 provisions.

Plaintiff, vigorously supporting the significance of the certificate, relies on its delivery in Iowa, its execution by Aetna, and the fact Aetna was licensed to do business in this state. She emphasizes the group policy provision which states, "The Insurance Company will issue to the policy holder for delivery to each insured individual, an individual certificate, setting forth a summary of the essential features of the insurance coverage to which the individual is entitled and stating to whom the benefits are payable." She argues there could be no insurance in effect insuring the life of Lindstrom until delivery of the certificate to him in Iowa.

Aetna contends the certificate was informational only and not part of the insuring contract. It relies on language in the master policy specifying the policy was delivered in Missouri and that, "This policy is a contract between the Policyholder [Western Auto Supply Company] and the Insurance Company and shall be construed in accordance with the law of Missouri." It further asserts the following portions of the certificate support its position:

"GROUP INSURANCE CERTIFICATE

"AETNA LIFE INSURANCE COMPANY

\* \* \* \* \* \*

"HEREBY CERTIFIES that Group Policies Nos. GL–313379 and GC–313379 have been issued to

"WESTERN AUTO SUPPLY COMPANY

\* \* \* \* \* \*

"to insure certain individuals who meet eligibility and other requirements as set forth in the group policies.

"The group policies are contracts between the Policyholder and the Insurance Company and shall be construed in accordance with the law of Missouri, where they were delivered.

"The insurance described in this Certificate is provided under and is subject in every respect to all of the terms of the group policies which alone constitute the contracts. The obligations under the group policies of the Insurance Company and the rights under the group policies of all persons will be determined by the terms of the group policies. * * * Certain terms of each of the group policies are described on this and the following pages of this Certificate."

Other facts deemed controlling by Aetna are: the policy was delivered in the state of Missouri to the policyholder Western Auto Supply Company, a Missouri corporation, at its headquarters in Missouri; the policy was written by Aetna's agent in Kansas City, Missouri, and was filed with the Missouri insurance commissioner.

We cannot agree it was the legislature's intent to include within the statutory prohibition against delivering a policy unless it contains certain conditions, the act of delivering a certificate comparable to the one before us.

■ First, the legislature in other language in this chapter (§§ 509.2(7), 509.-3(2), 509.6) refers to individual certificates based on group policies, importing no more than an informational status to such instruments. The legislature in chapter 509 distinguishes a policy from a certificate. However, in the crucial statutory provision it employed only the word "policy." In construing a statute we have often said the express mention of one thing implies the exclusion of others. North Iowa Steel Company v. Staley, 253 Iowa 355, 112 N.W.2d 364 (1961); see In re Estate of Waddington, 201 N.W.2d 77 (Iowa 1972). We are similarly confined by the rule that when a statute makes specific enumerations of conditions governing a subject matter, the courts may not impose additional conditions. Carter v. City Council of City of Council Bluffs, 180 Iowa 227, 163 N.W. 195 (1917).

■ Second, the weight of case authority is against plaintiff's position, holding the applicable law governing group insurance is that of the state where the master policy is delivered. These cases have recognized such state as the state of contract rather than the forum state for the reason, among others, delivery of the certificate in the forum state was not essential to effect the coverage. See those decisions cited in Annot., 72 A.L.R.2d 695, 695–700, at §§ 1, 2.

The landmark case in this field is Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937). There the group insurance policy, issued in Pennsylvania, provided the contract should be governed by that Commonwealth's laws. It stipulated the insurer would issue to the employer certificates to show the insurance protection afforded each employee. The policy's 60 day maximum notice of disability (which plaintiff failed to give) was valid under Pennsylvania law but not under Texas law, which only required reasonable notice and declared invalid contract provisions fixing notice time at less than 90 days. What the Supreme Court there said, 301 U.S. at 203, 57 S.Ct. at 689–690, 81 L.Ed. at 1040 is persuasive here:

> "Petitioner insists that the delivery of the certificate in Texas made the law of that state, article 5546, applicable. But the certificate is not a part of the contract of, or necessary to, the insurance. It is not included among the documents declared 'to constitute the entire contract of insurance.' * * * It did not affect any of the terms of the policy. It was issued to the end that the insured employee should have the insurer's statement of specified facts in respect of protection to which he had become entitled under the policy. It served merely as evidence of the insurance of the employee. Petitioner's rights and respondent's liability would have been the same if the policy had not provided for issue of the certificate."

Among the many decisions following *Boseman* is Commercial Ins. Co. of Newark v. Burnquist, 105 F.Supp. 920 (N.D. Iowa 1952) where Judge Henry Graven extensively treated group insurance in Iowa and the certificate's purpose in this jurisdiction. Relevant by analogy is the following from 105 F.Supp. at 931:

> "The 'policyholder' in the present case, as the term is used in the quoted section, is the Iowa State Bar Association. See Iowa Code 1950, § 509.1(2), I.C.A. It is to be noted that subsection 2 of the quoted section [now § 509.3, Code 1971] merely requires that the certificate set forth a statement as to the insurance protection which the insured person has under the policy. * * * The certificate itself does not purport to be part of the contract. It merely certifies that the member to whom it was issued is insured under and subject to the conditions and limitations of the group policy, and then sets out the provisions of the master policy. It would thus seem that the certificate which was sent * * * was not

made part of the contract of insurance between them, but is merely a statement of the provisions of such contract. The master policy rather than the certificate sent to the insured member is generally held to be the contract of insurance."

In the case before us the certificate discloses the painstaking efforts of the drafter to insure its character as a non-contractual informational instrument only. If no certificate had been issued following Lindstrom's insurance application and the receipt by Aetna of the premium from the policyholder Western Auto, it is plain under the provisions of the master policy Aetna could not assert there was no coverage. The policy alone, by its terms, fixed the rights of those insured and the obligations of Aetna.

■ III. We recognize the law of conflicts is now in considerable disarray. The present concept of "interest-grouping" was not prevalent when *Boseman* was decided. We acknowledge also sound public policy might well dictate an Iowa resident be protected by the provisions of § 509.2, The Code, though only a certificate is delivered in this jurisdiction.

Yet in this law area we cannot escape the conclusion our public policy is built into the regulatory statutes and the statute applicable here cannot be logically construed to provide the coverage contended for by plaintiff. If sound public policy dictates such expansion, the legislature should do so by statutory amendment. In this connection, a comparable provision of the West Virginia Code, § 33–14–1, relied on in a decision cited by plaintiff, contains the following language, "No life insurance policy *or certificate* shall be delivered or issued for delivery in this State insuring the lives of more than one individual unless * * *." (Emphasis added.) See Poffenbarger v. New York Life Insurance Company, 277 F.Supp. 726 (S.D.W.Va. 1967).

Both the general rule relating to life insurance and the group insurance exception are set out in the Restatement (Second) of Conflict of Laws (1971). Section 192, at p. 600, is the general rule:

"*192. Life Insurance Contracts.*

The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an effective choice of law by the insured in his application, by the local law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

But the rationale of the group insurance exception, which we hold controlling in this case, is found in comment "h" following § 192, at pp. 605–06:

"*h. Group life insurance.* In the case of group life insurance, rights against the insurer are usually governed by the law which governs the master policy. This is because it is desirable that each individual insured should enjoy the same privileges and protection. So where an employer arranges for group life insurance for its employees, the rights of a particular employee against the insurer will usually be determined, in the absence of an effective choice-of-law clause and at least as to most issues, not by the local law of the state where the employee was domiciled and received his certificate but rather by the law governing the master policy with respect to that issue. This will usually be the state where the employer has his principal place of business.

"Choice-of-law provisions contained in group life insurance policies are more likely to be given effect than in the case of ordinary life insurance. This is because the organization or individual which procures the master policy will

usually have a stronger bargaining position than an individual insured with the result that the choice-of-law provision is less likely to have a 'take-it-or-leave-it' character."

We have carefully considered the decisions cited in support of plaintiff's position. Most are from the few jurisdictions which do not follow the majority rationale summarized in the Restatement. We find none with the overwhelming factual and statutory considerations present in the case at bar. Several are distinguishable and none are persuasive.

We therefore hold the case must be and is reversed.

Reversed.