Leo **DUBLINSKE, Administrator of the Estate of Marc Dublinske, Deceased, Appellant,**

v.

**PACIFIC FIDELITY LIFE INSURANCE COMPANY et al., Appellees.**

No. 2–56842.

Supreme Court of Iowa.

June 25, 1975.

McCullough Law Firm, Sac City, for appellant.

Mack, Hansen & Gadd, Storm Lake, for appellees.

REES, Justice.

This case had its genesis in a dispute over the amount due plaintiff under a policy of credit-life insurance issued by defendant Pacific Fidelity Life Insurance Company (hereinafter Pacific) to plaintiff's decedent. The other defendants admitted ultimate responsibility to pay the insurance proceeds under a reinsurance agreement. Plaintiff claimed the amount due under the policy is $2680.20, while defendants asserted the correct amount to be $1518.78. Trial court found in favor of defendants and rendered judgment in the lesser amount. Plaintiff appeals. We affirm.

Marc L. Dublinske bought a car in Texas under a contract calling for payment in installments. The amount he originally owed under the contract was $2680.20, and the term of indebtedness was 30 months. The unpaid balance decreased under a schedule upon payment of monthly install-ments of $89.34 each. Past-due installments bore interest. Included in the original amount of $2680.20 was a premium of $50.25 for a credit-life insurance certificate on the life of Dublinske as debtor, issued by Pacific under a group policy and payable to General Motors Acceptance Corporation as creditor-beneficiary and to Dublinske's estate as secondary beneficiary.

After the original transaction, Dublinske purchased another item, not involved here, which increased the monthly payments and the unpaid monthly balances shown on the original schedule.

Dublinske later prepaid the contract in full. Thereafter, and within the original 30-month term of indebtedness, he died in an automobile mishap. At the time of his death, the unpaid balance on the contract according to the original schedule of installments would have been $1518.78 had he not prepaid the contract.

Pacific's insurance certificate states that "if said debtor dies during the term of the indebtedness and while this certificate is in force under said policy, the Insurer will pay to said creditor an amount equal to *the original scheduled balance of the indebtedness or the net amount necessary to discharge the indebtedness at the time of death, whichever is greater,* provided however that such amount of insurance shall not exceed $10,000.00. If the payable amount exceeds the unpaid indebtedness, such excess shall be payable to a beneficiary other than the creditor, named by the debtor or to his estate." (Italics added.)

The parties disagreed over the meaning of the italicized words. Dublinske's administrator took the position that Pacific owes $2680.20. Pacific contended that it owes $1518.78 (originally it contended it owed $1428.18 but later admitted the correct amount is $1518.78 under its interpretation of the certificate).

Dublinske's administrator sued Pacific on the certificate for $2680.20, plus exemplary damages. The parties tried the case with-

out a jury, and the trial court granted the administrator judgment for $1518.78. The administrator appealed.

I. The administrator claims the language of the certificate is unambiguous. He reads it thus: Pacific will pay the greater of

(a) the original balance of the indebtedness under the schedule, or

(b) the net amount necessary to discharge the indebtedness at time of death.

He asserts that the original balance of indebtedness under the schedule was $2680.20, the net amount necessary to discharge the indebtedness at time of death was zero, the former amount is greater than the latter, and therefore Pacific owes $2680.20.

Pacific reads the certificate differently and supports its reading by the testimony of a company official as to Pacific's practice. See Hamilton v. Wosepka, 261 Iowa 299, 154 N.W.2d 164; 3 Corbin, Contracts, § 543A at 79–83 (1960) (1971 Supp.). Pacific contends that "original" modifies "scheduled" rather than "balance" and that "at the time of death" does not refer only to "the net amount necessary to discharge the indebtedness" but also to "the original scheduled balance of indebtedness". It reads the certificate thus: Pacific will pay the greater of

(a) the balance of indebtedness at time of death according to the original schedule, or

(b) the net amount necessary to discharge the indebtedness at time of death.

Pacific says that the balance of indebtedness at time of death according to the original schedule was $1518.78, the amount necessary to discharge the indebtedness at time of death was zero, the former is greater than the latter, and therefore it owes $1518.78.

II. We find ourselves constrained to agree with plaintiff's assertion the language of the certificate is unambiguous. We need not therefore resort to the familiar rule that since Pacific drafted the certificate its language must be construed against it and in favor of the insured.

The record discloses plaintiff's decedent had prepaid the purchase contract in full, anticipating all installments which would be due at the time of his death. Pacific did not undertake to pay on the contract any amount in excess of the "original scheduled balance". Under the express provisions of the certificate Pacific agreed to pay the unpaid balance of the contract in event of insured's death, or "the original scheduled balance of the indebtedness . . . at time of death, whichever is greater."

The term "original scheduled balance of the indebtedness" is susceptible to only one interpretation. It must mean—it can only mean—the amount which would be due at the time of the insured's death, computed without regard to any prepayments on the contract in accordance with the "original schedule".

As disclosed by the original schedule, the amount which would have been due on the contract at the date of decedent's death (ignoring prepayments) was $1518.78. Trial court was correct in interpreting the contract provisions as it did and finding that amount due plaintiff.

III. Trial court found on the facts that the administrator is not entitled to punitive or exemplary damages. We agree. See Thompson v. Mutual Benefit Health & Accident Ass'n of Omaha, 83 F.Supp. 656 (N.D.Iowa); Engel v. Vernon, 215 N.W.2d 506 (Iowa 1974); Amsden v. Grinnell Mut. Reinsurance Co., 203 N.W.2d 252 (Iowa 1972); Kuiken v. Garrett, 243 Iowa 785, 51 N.W.2d 149.

We find no reversible error and affirm the trial court.

Affirmed.

MOORE, C. J., and MASON, RAWLINGS and LeGRAND, JJ., concur.

UHLENHOPP, REYNOLDSON, HARRIS and McCORMICK, JJ., dissent.

UHLENHOPP, Justice (dissenting).

I think the quoted language of the certificate is at best ambiguous. The administrator contends with a good deal of reason that "the original scheduled balance" means the original balance on the schedule, which was $2680.20, rather than the balance on the original schedule at the time of death, which was $1518.78. To make "original scheduled balance" mean the balance "at the time of death," one must say that the phrase "at the time of death" refers back to "original scheduled balance," but it appears instead to refer to "the net amount necessary to discharge the indebtedness."

If the language is ambiguous as I believe, the familiar rule applies that since Pacific drafted the certificate we construe the language against it and in favor of the insured. Lindstrom v. Aetna Life Ins. Co., 203 N.W.2d 623 (Iowa) (group policy); Wall v. Mutual Life Ins. Co. of N. Y., 228 Iowa 119, 289 N.W. 901 (life policy); Zeigler v. Equitable Life Assur. Soc. of U. S., 219 Iowa 872, 259 N.W. 769 (group); Murphy v. New York Life Ins. Co., 219 Iowa 609, 258 N.W. 749 (life). The evidence contains no indication that when Dublinske procured the insurance, he knew Pacific held the view of the meaning of the language which it now asserts.

I agree with the majority as to exemplary damages, but would reverse and direct that judgment be entered for the administrator for $2680.20, interest, and costs.

REYNOLDSON, HARRIS and McCORMICK, JJ., join in this dissent.